61146 United States v. Bruce T. Mulkern Thank you. Hello, good morning. Good morning. May it please the court, Judge Torea. I'm John Haddo and I represent the petitioner, Brian Mulkern in this case. By way of background, the petitioner defendant, Brian Mulkern, pleaded guilty to being a felon in possession of ammunition in the District Court in Maine. The pre-sentence report recommended in the court found that Mr. Mulkern was subject to the 15 year mandatory minimum under the Armed Career Criminal Act, 18 U.S.C. section 924E. The petitioner conceded that the two burglars that were in his criminal history were qualifying convictions under the ACCA. The issue was whether one of two other offenses supplied a third predicate offense so that he would be subject to the 15 year mandatory minimum. These offenses in Mr. Mulkern's history were a Maine robbery conviction and a Maine drug conviction. The trial judge found that both of these were indeed qualifying offenses and opposed the 15 year sentence. The defense position was and is that neither one of these should qualify as an Armed Career Criminal Act precedent. Starting with the drug conviction, this was a conviction under Maine revised statutes 17A section 1103 trafficking in a Schedule W drug. It was agreed by both the government and the defense that this question would be evaluated under the modified categorical approach under Shepard and DeCamp. The parties stipulated a set of documents into the record that the court could consider under Shepard and DeCamp. What the records showed was that Mr. Mulkern had pleaded guilty to a part of that statute whereby possession alone of two grams of heroin was deemed trafficking under Maine law. So the argument is that just the simple possession alone of two grams of heroin doesn't meet the definition of a serious drug crime under the Armed Career Criminal Act. The question is under the clause serious drug crime does it involve manufacturing, distribution, or possessing with intent to distribute a controlled substance? And the question sort of narrows to does possessing two grams of heroin without any other evidence constitute possessing with intent to distribute a controlled substance under the Armed Career Criminal Act? And our answer that we argue in the district court argument here is no, it does not meet that definition. The subset of definitions in Maine law for trafficking as that term is used in Maine law has a series of possible ways of proving a number of different ways of proving that you have possessed that is have trafficked in a Schedule W drug. So Maine has a presumption that if you possess that certain amount it's deemed trafficking? That's correct. Is it a presumption? It's just that intent is not required to be proved by the prosecution. If it's a presumption it's irrebuttable. It's irrebuttable, that's correct. There are some parts of Maine drug law that create presumptions that are rebuttable when it comes to quantity. This particular one is not. So if your client admitted possessing it but said I've got ironclad proof I wasn't going to distribute it in fact I was taking it on a camping trip on myself I was going on the prosecution would be entitled to the instruction that the jury didn't have to find what his intent was. That's correct, that's absolutely correct. The defendant would have no way of mounting a defense of possessing a quantity simply possession for personal use. It is in essence a strict liability offense when it comes to mens rea. There is no mens rea, just possessing the two grams or more of cocaine I'm sorry of heroin is deemed trafficking. And is it heroin or is it heroin is defined under the statute at that time which could be a mixture that includes heroin? That's correct. It has since changed but at the time of Mr. Malkrin's conviction it was a mixture of a substance containing any amount of heroin, any detectable amount of heroin. So it could have been even less than two grams of actual heroin. In his possession he could still have been subject to this trafficking charge. And was in fact. As the court has seen in the briefs we've cited a Fourth Circuit case, the Brandon case, which is assessing a similar statute from North Carolina for cocaine possession of 28 grams. And the formulation that the court adopted in the Brandon case was whether the terms we see in the is manufacturing, distributing or possessing with the intent to distribute an inherent part of the offense at issue. And it's a useful formulation. What the court found there was that the simple possession of 28 grams of cocaine does not inherently involve, it is not intrinsic to the offense that the defendant possessed the drug, the cocaine, with the intent to distribute it. And so it's different from cases, for example, where of course the jurisprudence of the courts in this court in construing the term involved in that clause is that it's to be broadly construed in a number of cases But isn't the issue whether the trafficking definition of Maine applies? I believe so. And that varies in that Brandon case. They mentioned how different states do it all the way up to 150 grams in Missouri all the way down to five grams in Delaware. But there's something about your argument that has confused me more than usual. And that is, you have stated that this raises an irrevocable presumption. Does that take care of your argument? Well, I would say no for federal law. And I think that this was a strong subject in the trial court because I think the trial judge was concerned with the application of Maine state law in Maine. And that is, are you telling me that Maine has no right to treat this in this way? That is, Maine can't deem possession of two grams as trafficking. That's up to Maine. And that's correct. But how that's treated under the Armed Career Criminal Act is a different matter. Maine can prosecute people for simple possession of two grams as traffickers. But is that binding in this court? And this court is interpreting the clause, the serious drug offense clause of the Armed Career Criminal Act. And it's not. Now, Maine may have made that determination. But that doesn't mean that it, under the terms of the Armed Career Criminal Act, involves possession with intent to distribute. Because... What amount would we use to determine whether it's trafficking or not? In determining whether it's trafficking or not? Well, I think the issue really is the use of that word trafficking, it doesn't appear in the Armed Career Criminal Act. And so it's sort of like the analysis that the Supreme Court undertook in Taylor, where they were saying, well, here's this term burglary, and that term actually was used in the Armed Career Criminal Act, but the court said, you know, we can't just say because a state deems this offense burglary that we have to deem it burglary. And I think it's a simple analysis here, even though the term trafficking doesn't even appear in the Armed Career Criminal Act. But it naturally raises in one's mind this notion that trafficking involves distributing, in fact, different states define it differently. But in Maine, Maine defines it as, among other things, possessing two grams or more of heroin. Do we have to answer Judge Tobias' question in writing a decision as to where the line is to be drawn? Or do you want us to say wherever that line is, two isn't it? Yes, that's right. And that's what happened in Brandon. In looking at the facts of this case, one can say, well, two grams certainly is a small enough amount that an individual could possess this for individual, for personal use. And so, you know, the question as to where is the line isn't really posed by this case, because this is such a small amount, as it was in Brandon, that the court could say comfortably, we can't deem this possession with intent to distribute, because at this amount, and with the defendant not even having had a chance to present evidence that, as Judge Kayada pointed out, that this was personal use for, you know, going on a camping trip or something. How about the robbery charge? On the robbery charge, we're looking at 17 A.N.R.S. 8, Section 651, because I read your brief as implicitly saying we were under Subsection B, but then the government came in and stressed that this conviction was under C. And in your reply brief, you agree with the government that it's under C. So it seems both parties have agreed that this state conviction was under 651.1, Subsection C. Have I got that correct? Well, there's an issue there, Your Honor, and that's because in the state court record, there's confusion. I'm not asking if there's confusion. I'm asking if I've got the parties' positions before us correct. My assessment, Your Honor, is that it's Sub B, actually. In your reply brief, you say it's C. Yeah, and that actually is a mistake. It is Sub B that appears to be the charge he actually ultimately pleaded to. It's clear that he pleaded to a Class B offense. That's a certainty. And on that front, our argument is that under the precedent of Raymond v. State, that the degree of force required by the main robbery statute is insufficient under Johnson to create liability under the Armed Care Criminal Act. Raymond v. State, again, is another perch snatching case. I heard the court addressing the perch snatching case as sufficient to create robbery under Massachusetts law. And Maine law has the Raymond case, which is quite similar to the Massachusetts Jones case, in which the Maine law court said perch snatching is sufficient under Maine law, Maine statutes, to constitute robbery. And therefore, the degree of force that's necessary to violate the Maine robbery statute is very low. It's just enough to remove something from someone's hand. And therefore, under Maine state law, the robbery conviction is also insufficient to constitute a predicate offense. If the court has no further questions, that is my presentation. Thank you. I'm Margaret McGoy for the United States. If I may address first the drug crime. The government's brief has explained in some detail this court's opinions in McKinney and in Wimbledon, and members of this panel sat on one or the other of those cases, and the court, I'm sure, is familiar with them. The government has also addressed Maine's four-tier drug system. Starting at the top is aggravated trafficking. The next most serious is trafficking. The next most serious is furnishing. And then the simplest one is simple possession. In the government's view, there are really six reasons that that crime, possession of two grams or more of heroin, is a crime involving the manufacturing, distributing, or possession with intent to distribute of a controlled substance that is punishable by more than 10 years or more. One of them is this court's reasoning in McKinney and in Wimbledon that the term involving, as is used in the Armed Career Criminal Act, is a term that must have a broad meaning. And the reason it must have a broad meaning is that otherwise the only drug crimes that would qualify would be, in fact, manufacturing, in fact, distributing, or, in fact, possession with intent to distribute. That's problem one. Conspiracy. Well, Wimbledon was basically a conspiracy case, and it said that even though it's an incohate crime and there's no evidence that the defendant even possessed the drugs or that he intended to distribute it, if he agreed to possess with intent to distribute, it's an incohate crime. So that's an example of something that involves it that doesn't do it. Correct. So that's only one part of my argument of the broad reading of the word involving. The second is that Maine characterizes as trafficking possession of two grams or more of heroin or 90 bags or more of heroin. The courts have frequently referred to dictionary definitions of trafficking, and the dictionary definition and the common understanding of trafficking is bartering, buying, or selling, all of which connote the same as possession with intent to distribute. We need to do an element analysis of Amathus. And as I look at this Maine statute, if you have a mixture that contains a very small amount of heroin in it, but the mixture is over two grams, then you can be convicted under this crime. And if you had ironclad evidence that it was for personal use, you had no intent to distribute it, you wouldn't even get an instruction to the jury that they had to consider that. So how would we find that an element of this crime involves manufacturing, distribution, or possession with intent to manufacture, when the defendant wouldn't even be entitled to an instruction that the government needed to prove intent to manufacture or that it involved any of those? Well, I think one answer to that, Judge Kayada, is the structure of the Maine statute itself. It defines the term trafficking five ways. One of them is to make, create, or manufacture. That would qualify. One is to grow or cultivate, except for marijuana. That would qualify. Another is to sell, barter, trade, exchange, or otherwise furnish for consideration. That would qualify. A third is possessed with intent to distribute either any of the characteristics A through C. And then the fifth one is to possess two grams or more or 90 bags or more of heroin. And that seems to undercut your argument because you've got five definitions. Four of them do. We could do an element analysis under Mathis, but under this fifth one, when we do the element analysis, there's nothing there other than that the state has called it trafficking. Well, and I think this ties into what Judge Torrella was asking and what Judge Thompson said we might be able to avoid, and that is what is the Maine legislature's prerogative in deciding what the cutoff is? And it is the Maine legislature's prerogative to say two grams or more or 90 bags or more. It is now pure heroin. It's not a substance containing heroin. But Maine can say that, but the question is under ACCA, how does that fit within our federal definition? Because the question for you, Judge Thompson, is whether it is a crime involving the manufacture, distribution, or possession with intent to distribute. How does possession of a small amount involve one of those things? Well, several ways. One is, excuse me? Other than Maine's definition. I think when the court is looking at the elements of a crime, the court has to look at the way the state has structured the crime. And the state has structured the crime to bring within the purview of trafficking four things that clearly fit, and a fifth one that the Maine legislature made the decision ought to qualify as trafficking because of the amount. We're dealing here with a federal crime, right? We're dealing with a state crime. But we are dealing with a federal crime. And basically what this system does is in Maine, somebody with two grams can be convicted under the criminal statute. But in Missouri, that same person can have 150 grams and not be convicted under that statute. That doesn't make very much sense to me. Well, different states and in fact the federal government have chosen to punish different quantities of different drugs, different ways. And one of the points that the district treasurer... I thought the whole system of the sentencing commission was to have some kind of equality across the nation. How does that fit into that? Well, look at it a different way, Judge Torawaya. If you were to accept the defendant's argument that trafficking in two grams of heroin is not a possession with intent to distribute crime, then what you are doing is you are taking the Maine legislature's evaluation of trafficking, which the law court has said is more serious than furnishing, and you're making it the equivalent of furnishing. Well, I think the problem I'm having with your argument, Ms. McGoy, is you place a central weight on the name of the offense assigned by the Maine legislature. Indeed, if we change that offense from trafficking to nothing or possession, your whole argument collapses, as I understand it. Well, not necessarily, Judge Ketter, because one thing I want to double check before I give you a definitive answer is whether under the version of the statute under which Mr. Mulhern was convicted, it was pure heroin or whether it was a substance contained... Okay, but let's put that aside. Whether it's pure heroin or not, your whole argument hinges on it being called trafficking. If the statute were called possession, I don't think you'd be saying anything to us. Well, I would still ask you to analyze whether it is a crime involving the possession... But then you've essentially eliminated the phrase manufacturing distribution or possession with intent to manufacture or distribute it by asking us to rule that if you possess, then it involves one of those things. I'm asking you to consider it what Maine considers it, and Maine considers it that trafficking for good reason. Well, but now you're back to the title of the statute. And I think the title isn't that important... But there is the problem. The Supreme Court has never told us that we're to look at what the state labels the statute or calls the statute. It would have been a lot easier, for example, assault and battery with a deadly weapon. That's the name Massachusetts gives to a statute, and yet we found that doesn't meet the ACCA requirements because we have to look not at the name of the statute but the elements. And so it seems to me we put to one side the name of the statute and we look at the elements, and the only element here is possessing two grams of heroin mixture, period. And another answer to that, Judge Chiata, is that under established federal law, possession of certain amounts of drugs permits an inference of intent to distribute. Sure, but the jury would then have to find that that inference proved it as an element of the crime. And under the main statute, the jury doesn't have to find it at all. If the jury sent back a note under this main statute that said we are convinced this guy had it only for personal use, can we still convict, the answer would have been absolutely. And that's the problem. I have six minutes left, and I don't want to miss that opportunity to address the robbery conviction. Before we go on to the robbery, I'm sorry to interrupt you. Would you just tell me whether Brandon has any relevance in this case? I think Brandon is the minority. I think there are two other circuits cited in the government's brief that have analyzed state statutory systems where there is a tiered reference, and those cases have held that they involve the manufacturing distribution or possession of intent to distribute. So you have to go with the minority view over the majority view. Does that answer your question, Judge? Well, if we go with it, maybe it becomes a majority. True. Well, it becomes evenly balanced if you go with Brandon. Let me get to the robbery conviction. The court is familiar with the definition of a violent felony. It is a felony that has as an element the use, attempted use, or threatened use of physical force against the person of another, and force for that purpose is defined as force capable of causing physical pain or injury. I don't think that there's any dispute among the parties that the main robbery statute is divisible. It is divisible two ways. One is because there are two forms of it, the use of force, the intentional bodily injury, or the dangerous weapon, which has one set of elements and is punished as a Class A crime, and the second is the reckless injury or threatened use of force, which is punished as a Class B crime. To answer your question, Judge Kayette, yes, we are dealing with subsection C. You have, as part of the record, the charging instrument to which the defendant pleaded guilty in the main courts. It was originally charged as under Section B, but it was crossed out, and the reference to a dangerous weapon was eliminated from the charging instrument. So it is clear, notwithstanding what Mr. Haddow says, that we are dealing with C, not with any other portion. The charging instrument says it's a Class B. It's charged with a Class B crime. Well, when you look at the cover sheet... Am I correct that it says a Class B crime? That's the only reference to Class? Yes, it is a Class B crime. And C is a Class A crime? No, I'm sorry. C is a Class A crime. So how do you get to C if the charging instrument says it's a Class B crime? You look at the charging instrument, which tracks the language of C, and it says that on or about specified debate, the defendant attempted to commit theft by exercising unauthorized control over the property of the store and the named victim, and at the time it was actioned, he threatened to use force against the named victim with intent to compel her to give up money, and then the reference to, and he was armed with a dangerous weapon during the course of the robbery was eliminated. So I think the fair reading of that by the striking of the language is that it is under Section C. Now, Section C requires... I'm sorry. If we disagree, because I'm not sure that's correct. If we disagree and think it's a B, what's the argument? Well, you still look at the elements, and you look at what the charging instrument was. You are convinced, I think, that it is a divisible crime. You look at the language of the charging instrument. The language says there was the threatened use of force against a victim with the intent to compel her to give up the money. So the question is, is that sufficient degree of force as an element of the crime to make it an armed career criminal conviction, if I understand your question? B is actually better for you than C. So this is what I can't figure out. I'm going to take the most difficult route, Judge Kaye, because if I can convince you of the most difficult route, I can convince you of the less difficult route. That would seem to be C, actually. Let me explain why it has the use of force, because it's really the force aspect of it that the defendant is challenging. It seems to me that there are three possibilities with respect to a robbery. One is I simply say, give me your money, and that's all I do. That's not going to be a violent felony. A second is, at the other end of the spectrum, I say, give me your money, and I punch you in the nose. That's obviously a violent felony. But if I have the third one in the middle, I say, give me your money, and I either spit at you or poke you in the shoulder, that's probably not violent force, so it's not the actual use of force, but it's the threatened use of force. And the threatened use of force makes a crime, an armed career criminal, predicate the same way as the actual use of force. What about just the straight out, you're in a bunch of crowded people, and someone walks up behind you and snatches your purse off your arm and runs away? You can be convicted under the statute for that. Correct. So we're in a joke, Maine has essentially followed Jones under the Massachusetts precedent. So how do we say that that is a crime, that one of the elements of that that I just described includes the use of threatened use of violent force? Because Maine, you're going to have to predict, following your Tavares opinion, you're going to have to predict what Maine would do, because Maine has not clearly taken sides on the violent as opposed to nonviolent form of purse snatching. And I think Judge Torway began the argument of the first case with this same example, that if somebody grabs my purse, there is going to be force involved. I thought Maine in Raymond had held that the mere act of snatching a purse from the hand of a victim is sufficient act of physical force required for a robbery. That's violence. Yes, and what Maine did, my time is up, may I answer your question? Yes. Maine cited the Jones case, which is a Massachusetts case. Jones itself and in its citation of Milwaukee took sides on the differentiation between the states as to whether purse snatching by stealth is a violent crime or whether purse snatching by force is a violent crime. And Massachusetts has taken the position that purse snatching by force, grabbing it from my arm when there is a willingness to use force and when I am aware of the willingness to use force, that that is a violent felony because it involves physical force against the person or another. But we don't care what Massachusetts thinks is a violent felony. I mean, we care what it is, but that's not our job. Our job is purse snatching as described as sufficient in Massachusetts meet the Johnson definition of physical force that would cause pain or injury. Well, to quote your Rube Goldberg analogy, Judge Kayada, I believe you walked up to any person on the street and said, do you think robbery is a violent felony? Any person on the street would say yes. You walked up to any woman and said, somebody snatched that pocketbook off of your shoulder, do you think that's a violent crime? Any woman would say yes. So I think you're looking at the elements, you're looking at the state definition of the element, but when you get down to the common sense approach, is it a crime that has force that is capable of causing pain or physical injury? In its most limited sense, purse snatching is. Does the court have other questions? Otherwise the government will urge the court to affirm. Thank you.